**Carlos Humberto ORDONEZ, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–70904.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1998.

Decided March 2, 1998.

Amos Lawrence, San Francisco, California, for petitioner.

Kristal A. Marlow, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: FLETCHER, MAGILL,\* and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Petitioner Carlos Humberto Ordonez seeks review of a final order of deportation issued by the Board of Immigration Appeals ("BIA"), which denied his application for suspension of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). Because we find that the BIA abused its discretion by failing to consider all relevant factors in its "extreme hardship" analysis, we grant the petition for review, vacate the order and remand for further proceedings consistent with this opinion.

\* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

## I.

Ordonez, a forty-three-year-old native citizen of Guatemala, entered the United States without inspection on December 5, 1987. His wife and three children continue to live in Guatemala, where Ordonez owns a house, a car, and has about $1,000 worth of savings. Since arriving in the United States, Ordonez has lived in the San Francisco area, working odd jobs such as construction, roofing, and gardening. He sends approximately $350 per month to his family in Guatemala.

In 1981, Ordonez resigned from his position with the Guatemalan police. In 1984, a military official stationed in Ordonez's hometown of Zacapa attacked him with a knife. Ordonez then fled to Esquitla, 250 kilometers away, where in 1987 that town's chief of police, together with several bodyguards, attempted to abduct him. Due to the crowd present at the scene of the incident, Ordonez was able to escape. He subsequently decided to flee the country and came to the United States.

In 1989, Ordonez's brother-in-law was assassinated by members of the Guatemalan army near the Honduran border. Ordonez's original Zacapa attacker has since been promoted to the chief of the military in that city.

Because he entered the United States without inspection, in May 1995 Ordonez was issued an order to show cause why he should not be deported. He admitted the order's allegations at a preliminary hearing in June, yet indicated his intention to apply for asylum, suspension of deportation, and, alternatively, voluntary departure. At a later hearing before an immigration judge ("IJ"), Ordonez withdrew his asylum application for reasons not clear from the record. Instead, he relied solely on his application for suspension of deportation.

At this second hearing, Ordonez described a Guatemalan practice of killing former police officers. He explained that "the system" in Guatemala dictated that when one "resigns working at the police department, they try to find a way to kill you." Ordonez believed that the 1984 knife attack in Zacapa, the 1987 abduction attempt in Esquitla, and his brother-in-law's murder all evidenced an attempt to murder him because of his resignation from the police force.

The IJ found that while Ordonez had met the residency requirements for suspension of deportation, his failure to file any income tax returns, taken together with a 1988 conviction for spousal abuse, precluded him from meeting the "good moral character" requirement. Additionally, the IJ concluded that Ordonez had not met his burden of showing that "extreme hardship" would result from the deportation. The IJ therefore denied the application. While concluding that Ordonez did subjectively fear for his own safety upon his return to Guatemala, the IJ stated, "I have absolutely no objective evidence and I find that I cannot support an objective finding of persecution against him on the basis that he resigned.... Something is wrong, but I don't know what it is, so I cannot make the objective finding and therefore, I cannot find that there is extreme hardship in this case."

The BIA affirmed the IJ's conclusion and dismissed Ordonez's appeal. After clarifying and correcting the IJ's extreme hardship analysis on a number of factors, the BIA agreed with the IJ's conclusion that Ordonez had failed to establish extreme hardship. After noting that he had lived in the United States less than two years more than the statutory minimum, that he arrived here at age thirty-three, that his family is in Guatemala, and that his work history is sporadic, the BIA specifically addressed Ordonez's fear of persecution. Stating that the past attacks could have been due to personal animosities or any number of other reasons not evident in the record, it concluded that Ordonez "has not shown that any attacks he might encounter upon return to Guatemala would be related to the political conditions there." Accordingly, the BIA affirmed the IJ's dismissal of Ordonez's suspension application. This timely petition for review followed.

## II.

The BIA's decision to deny an application for suspension of deportation is reviewed for an abuse of discretion. *Astrero v. INS,* 104 F.3d 264, 267 (9th Cir.1996); *but see Hernandez–Luis v. INS,* 869 F.2d 496

(9th Cir.1989) (reviewing the BIA's determination of *statutory ineligibility* due to the failure to establish continuous seven year residency for substantial evidence). This discretion is not abused when the BIA has decided the case on all of the relevant factors before it. *Astrero*, 104 F.3d at 267 (citing *Santana–Figueroa v. INS*, 644 F.2d 1354, 1356 (9th Cir.1981)). The BIA construes the extreme hardship requirement narrowly, and we will not disturb the BIA's conclusion unless: (1) it has abused its discretion by failing to consider all relevant factors bearing on extreme hardship; or (2) it has not articulated reasons for denying the application that are supported by the record. *Id.*

### III.

■ Although Ordonez applied only for suspension of deportation, the crux of his argument is that he has been and will be persecuted in Guatemala on account of his resignation from the Guatemalan police. Persecution claims are ordinarily considered in the context of an asylum application, rather than one for suspension of deportation. Nevertheless, the only law applicable to this case is that which is relevant to the remedy which Ordonez seeks: suspension of deportation.

■ Suspension of deportation is an "exceptional" remedy, only available for "unique extenuating circumstances." *Ramirez–Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986). In order to qualify for suspension of deportation, an alien must show three things: (1) physical presence in the United States for a continuous period of at least seven years; (2) good moral character for the duration of that period; and (3) the deportation order would result in extreme hardship to the alien or a spouse, parent, or child who is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1254(a)(1)(1987)(amended 1996).[1] The alien carries the burden of proving both that he has met the statutory requirements and that he merits a favorable exercise of discretion. *Ramirez–Durazo*, 794 F.2d at 497.

■ There is no statutory requirement that the BIA consider "political persecution" claims in the context of an application for suspension of deportation. *Kashefi–Zihagh v. INS*, 791 F.2d 708, 710 (9th Cir.1986). Thus, "the BIA may conclude that claims of political persecution have no relation to a determination of 'extreme hardship.'" *Id.* However, if the BIA does consider such evidence, it does so as evidence of extreme hardship, and asylum law no longer controls the inquiry. *See id.; see also Zavala–Bonilla v. INS*, 730 F.2d 562, 568 (9th Cir.1984).

In this case the BIA concluded that Ordonez had not met his burden of showing extreme hardship. It considered several factors, including Ordonez's occupation, his family's residency in Guatemala, his property ownership, his English-speaking abilities, his age, his health, the duration of his residency in the United States, his ability to find work upon returning to Guatemala, and the lack of evidence regarding his prominence in the community. On several factors, the BIA even corrected the IJ's negative assessments.

However, in addressing Ordonez's subjective fear of persecution if forced to return to Guatemala in the context of an extreme hardship analysis, the BIA considered the persecution only insofar as it related to the political conditions in Guatemala, one of the factors considered relevant to the extreme hardship analysis in *Matter of Anderson*, 16 I & N Dec. 596, 1978 WL 36475 (BIA 1978). Probably as a result of the confusion surrounding Ordonez's somewhat unusual approach of offering persecution evidence to show extreme hardship under a claim for suspension of deportation, the BIA's decision seemed to require Ordonez to show either persecution on one of the five statutory grounds for asylum, or that the persecution evidence was relevant to one of the *Matter of Anderson* factors. The BIA concluded that Ordonez "has not shown that any attacks he might encounter upon return to Guatemala would be related to the political conditions

---

1. The amendments to the governing statutes are only applicable to applications filed after April 1997 and are therefore not applicable to this case. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 604, Pub.L. No. 104–208, 110 Stat. 3009.

there." Accordingly, it denied Ordonez's application.

 In *Matter of Anderson,* the BIA discussed a congressional committee report which listed several factors relevant to a discretionary decision to suspend deportation. In listing and implicitly adopting these factors, *"among others,"* the BIA gave meaning to the term "extreme hardship." *Id.* at 597 (emphasis added). Listed factors include the alien's age, the length of his residence in the United States and abroad, his health, the economic and political conditions of the country to which the alien may be returned, his financial status and occupation, the possibility of the alien's status being adjusted by other means, his immigration history, and his position in the community. *Id.* However, these factors are not meant to operate to the exclusion of all other relevant evidence. *See id.* (introducing the factors by directing the Attorney General to "consider the following facts and circumstances *among others* " (emphasis added)). The fact that an applicant's extreme hardship claim cannot be forced within one of the listed *Matter of Anderson* factors is not an automatic bar to a suspension of deportation application. The requirement that the BIA consider *all* relevant factors, *see Astrero, supra,* does not contemplate any existing list of categories, but rather that the BIA fully and completely consider all facts which bear on the extremity of the hardship which deportation may inflict.

Although the BIA is not statutorily required to consider evidence of persecution at all outside of an asylum or withholding of deportation claim, *see Kashefi–Zihagh,* 791 F.2d at 710 ("the BIA may conclude that claims of political persecution have no relation to the determination of extreme hardship under section 244(a)(1)"), once it does so it must consider *all* evidence relevant to the hardship inquiry. If a persecution claim is considered in the suspension context, the five asylum grounds become irrelevant, and the *Matter of Anderson* factors are not dispositive of the claim. The BIA must simply consider whether the alien meets the requirements for suspension of deportation, including a showing of extreme hardship, and if so, whether he merits a favorable exercise of the BIA's discretion.

The BIA erred in not fully considering Ordonez's application. If a petitioner could show, for example, that upon return to his native country he faced certain death at the hands of organized crime, the fact that he could not show a political motive for the criminals' conduct would not prevent a finding of extreme hardship. By limiting its inquiry to whether Ordonez had shown persecution on account of political conditions in Guatemala, the BIA precluded itself from considering other relevant hardship factors: mainly Ordonez's claim that he would be met with certain death if forced to return there. Because the BIA failed to consider all of the relevant factors in its extreme hardship analysis, it abused its discretion. Accordingly, we grant Ordonez's petition, vacate the BIA's order and remand the case for further proceedings consistent with this opinion.[2]

VACATED AND REMANDED.

---

2. We express no opinion on the merits of Ordonez's petition if properly considered by the BIA.

