Carlos Humberto ORDONEZ,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 01–71752.

United States Court of Appeals,
Ninth Circuit.

Submitted May 16, 2003 \*.

Filed Oct. 2, 2003.

---

\* The panel unanimously finds this case suitable for disposition without oral argument. *See* Fed. R.App. P. 34(a)(2)(C).

Paul Fiorino, U.S. Department of Justice, Civil Division, Washington, DC, for the respondent.

Before TASHIMA, BERZON, and CLIFTON, Circuit Judges.

## OPINION

TASHIMA, Circuit Judge:

Carlos Humberto Ordonez ("Ordonez"), a native and citizen of Guatemala, petitions for review from the Board of Immigration Appeals' ("BIA's") denial of his motion to reopen his application for suspension of deportation for consideration of previously unavailable evidence on the issue of extreme hardship. He challenges the BIA's finding that he was ineligible for suspension of deportation because he failed to voluntarily depart as provided by an earlier order. He also challenges the BIA's conclusion that the additional evidence did not demonstrate extreme hardship. We have jurisdiction pursuant to 8 U.S.C. § 1105a, as amended by IIRIRA § 309(c)(4).[1] Because Ordonez did not receive adequate notice of the effects of failing to voluntarily depart and because the BIA erred in dismissing his evidence of extreme hardship, we grant the petition for review and remand.

## BACKGROUND

Ordonez, a native and citizen of Guatemala, entered the United States on December 5, 1987. The Immigration and

Amos Lawrence, San Francisco, CA, for the petitioner.

---

1. Because deportation proceedings were commenced against Petitioner prior to April 1, 1997, and the final order of deportation was entered after October 30, 1996, the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") apply to his case. *Chand v. INS,* 222 F.3d 1066, 1073 (9th Cir.2000). Therefore, we have jurisdiction over his petition under 8 U.S.C. § 1105a, as amended by IIRIRA § 309(c)(4). *Id.; see also Pedro–Mateo v. INS,* 224 F.3d 1147, 1149 (9th Cir.2000).

Naturalization Service ("INS") issued an Order to Show Cause on May 31, 1995, charging that he was deportable for having entered the United States without inspection. The immigration judge ("IJ") held hearings on June 29, 1995 and August 31, 1995. Ordonez admitted the order's allegations at a preliminary hearing in June, but indicated his intention to apply for asylum, suspension of deportation, and, alternatively, voluntary departure. *See Ordonez v. INS*, 137 F.3d 1120, 1122 (9th Cir.1998) (a prior appeal in this case). At a later hearing before an IJ, Ordonez withdrew his asylum application for reasons not clear from the record. *Id.* Instead, he relied solely on his application for suspension of deportation. *Id.* At this second hearing, Ordonez described a Guatemalan practice of killing former police officers. *Id.* He explained that "the system" in Guatemala dictated that when one "resigns working at the police department, they try to find a way to kill you." *Id.*

In *Ordonez*, we described Ordonez's experience in Guatemala as follows:

In 1981, Ordonez resigned from his position with the Guatemalan police. In 1984, a military official [Olverio Casseola] stationed in Ordonez's hometown of Zacapa attacked him with a knife. Ordonez then fled to Esquitla, 250 kilometers away, where in 1987 that town's chief of police, together with several bodyguards, attempted to abduct him. Due to the crowd present at the scene of the incident, Ordonez was able to escape. He subsequently decided to flee the country and came to the United States.

In 1989, Ordonez's brother-in-law was assassinated by members of the Guatemalan army near the Honduran border. Ordonez's original Zacapa attacker has since been promoted to the chief of the military in that city.

*Id.* Ordonez believed that the 1984 knife attack in Zacapa, the 1987 abduction attempt in Esquitla, and his brother-in-law's murder all evidenced an attempt to murder him because of his resignation from the police force. *Id.* In denying Ordonez's application, the IJ concluded, among other things, that Ordonez had not met his burden of showing that extreme hardship would result from deportation. *Id.* While concluding that Ordonez did subjectively fear for his own safety upon his return to Guatemala, the IJ stated, "I have absolutely no objective evidence and I find that I cannot support an objective finding of persecution against him on the basis that he resigned.... Something is wrong, but I don't know what it is, so I cannot make the objective finding and therefore, I cannot find that there is extreme hardship in this case." *Id.*

Although the IJ's August 31, 1995, order denied Ordonez' application for suspension of deportation, it granted voluntary departure until December 15, 1995 "with an alternative order of deportation to Guatemala should he not comply." The administrative record includes a document, entitled "Limitation on Discretionary Relief for Failure to Appear," indicating the consequences of failing to voluntarily depart. The document, signed by the IJ on August 31, 1995, states:

You have been granted voluntary departure from the United States pursuant to section 244(e)(1) of the Immigration and Nationality Act. Remaining in the United States beyond the authorized date other than because of exceptional circumstances beyond your control will result in your being ineligible for certain forms of relief under the Immigration and Nationality Act (see section A. Below) for five(5) years from the date of

scheduled departure or the date of unlawful reentry, respectively.

\* \* \*

A. THE FORMS OF RELIEF FROM DEPORTATION FOR WHICH YOU WILL BECOME INELIGIBLE ARE:

1) Voluntary departure as provided for in section 242(b) of the Immigration and Nationality Act;

2) Suspension of deportation or voluntary departure as provided in section 244(e) of the Immigration and Nationality Act; and

3) Adjustment of status or change of status. . . .

This written notice was provided to the alien in English and in Spanish. Oral notice of the contents of this notice was given to the alien in his/her native language, or in a language he/she understands.

The IJ also provided the following oral warnings about the failure to depart voluntarily without seeking an extension:

IJ: Now, your lawyer thinks I may have made an error and I've given him the right to file an appeal and that's fine. So, the matter, I suppose, is not over. However, you must comply with either my order, or with any extension that you get by the Immigration and Naturalization Service, or this turns into an order of deportation and you will not legally be able to live in the United States for a period of five years.

Do you understand?

A. Yes, I understand.

. . .

IJ: I will serve the orders and the limitation on discretionary relief upon you in Spanish and in English.

Ordonez did not depart by December 15, 1995. He filed an appeal with the BIA which was denied on September 30, 1996. The BIA affirmed the IJ's dismissal of Ordonez's suspension application, agreeing that Ordonez had failed to establish extreme hardship. *Ordonez,* 137 F.3d at 1122. It concluded that Ordonez "has not shown that any attacks he might encounter upon return to Guatemala would be related to the political conditions there." *Id.* The BIA permitted voluntary departure "within 30 days from the date of this order or any extension beyond that time as may be granted by the district director." The BIA's order also stated that "in the event of a failure to so depart, the respondent shall be deported as provided in the Immigration Judge's order."

On appeal, we concluded that the BIA abused its discretion by limiting its inquiry to whether Ordonez had shown persecution on account of political conditions in Guatemala and thereby failing to consider whether Ordonez's claim that he would be met with certain death if forced to return to Guatemala constituted extreme hardship. *Id.* at 1124. We remanded for consideration of additional hardship factors. *Id.*

On remand, Ordonez submitted supplemental briefing. On April 16, 1999, the BIA again dismissed Ordonez's appeal of the denial of suspension of deportation, finding that Ordonez had neither shown that he would be faced with death or physical harm if forced to return to Guatemala nor that he would experience extreme hardship if removed to Guatemala. The BIA's order again permitted voluntary departure, stating:

Pursuant to the Immigration Judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I & N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States

voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the Immigration Judge's order.

Ordonez did not depart by the thirtieth day after the order's entry.

On June 10, 1999, Ordonez filed a motion to reopen for consideration of previously unavailable evidence of extreme hardship. With his motion to reopen, Ordonez filed a declaration stating that, in July 1998, eight men told his brother-in-law to leave the country, an incident the brother-in-law suspected was linked to the earlier incident in which Ordonez had been forced to leave the country by Casseola, the man who attacked Ordonez in 1984. His declaration stated that, on December 29, 1998, Ordonez's brother-in-law and his wife's uncle were murdered by people Ordonez believed were acting on behalf of Casseola. He also declared that two days after the murders, his wife received a phone call saying that she would be next. Prior to the brother-in-law's murder, Ordonez's wife noticed cars with tinted windows passing their adjacent houses.

Ordonez declared that he believes that his brother-in-law's murder and threats to his wife stem from their connection with him and demonstrate that he is still in danger from the military. He believes that the military wants him dead "because of confidential information [he] know[s] about their previous activities as a former member of the National Police." In addition to his declaration, Ordonez submitted his brother-in law's death certificate identifying gunshot wounds as the cause of death, his wife's birth certificate, his own identification card, and the BIA's April 16, 1999, decision.

The BIA denied the motion to reopen. It found that Ordonez was ineligible for suspension of deportation pursuant to § 242B(e)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252b(e)(2) (since repealed), because he failed to voluntarily depart during the prior voluntary departure period. Alternatively, it held that his new evidence would not alter its conclusion that Ordonez had not shown extreme hardship. The BIA stated that the fact that his January 13, 1999, filing on remand failed to mention several of the newly raised incidents that allegedly occurred prior to the filing "casts doubt on the veracity of the respondent's claim as set forth in his June 10, 1999, motion to reopen." Although the BIA acknowledged that, as of the date of the January 1999 filing, Ordonez may have been unaware of the December 1998 and January 1999 events, it found that "there is no reasonable explanation given for the respondent's failure to mention the July 1998 threats against his brother-in-law." The BIA therefore found that "respondent's evidence would not alter our conclusion on the issue of extreme hardship." Ordonez timely seeks review.

## STANDARD OF REVIEW

We review the denial of a motion to reopen for an abuse of discretion. *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1221 (9th Cir.2002). Where, as here, the BIA engages in *de novo* review of the IJ's legal determinations, we review the decision of the BIA. *Varela v. INS,* 204 F.3d 1237, 1239 (9th Cir.2000). The Board's factual findings are reviewed for substantial evidence. *See Sharma v. INS,* 89 F.3d 545, 547 (9th Cir.1996). We review the BIA's determinations of purely legal questions *de novo. Rodriguez–Lariz,* 282 F.3d at 1222.

## ANALYSIS

### A. Adequacy of Notice

 The BIA found suspension of deportation barred by former INA § 242B(e), which provided:

(2) Voluntary departure

(A) Subject to subparagraph (B), any alien allowed to depart voluntarily under section 1254(e)(1) of this title or who has agreed to depart voluntarily at his own expense under section 1252(b)(1) of this title who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

(B) Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure, other than because of exceptional circumstances.

* * *

(5) Relief covered

The relief described in this paragraph is—

(A) voluntary departure under section 1252(b)(1) of this title,

(B) suspension of deportation or voluntary departure under section 1254 of this title, and

(C) adjustment or change of status under section 1255, 1258, or 1259 of this title.

8 U.S.C. § 1252b(e) (1995) (repealed).

 Ordonez argues that the bar to relief does not apply because he did not receive adequate notice of the consequences of failing to voluntarily depart as required by INA § 242B.[2] We agree. Both we and the BIA have previously indicated under another provision of § 242B the importance of oral notice prior to attaching adverse consequences to a failure to appear at a deportation hearing. *See, e.g., In re M–S–*, 22 I. & N. Dec. 349 (BIA 1998) (concluding that oral notice is required before a failure to appear at a deportation hearing can eliminate an alien's right to discretionary relief and stating "[t]o rule otherwise would render surplusage the requirement of § 242B(e)(1) that the oral warnings be given before the consequences ensue"); *Lahmidi v. INS*, 149 F.3d 1011, 1015 (9th Cir.1998) (noting that "the five year exclusion set forth in subsection (e) [of 8 U.S.C. § 1252b] is not effective unless the alien was given the proper notice under subsection (a)(2) as well as oral notice"). While these cases highlight the importance of notice, they do not indicate what constitutes adequate notice. We take this opportunity to clarify that oral notice under § 242B(e)(2)(B) must be explicit.

The oral advisory provided by the IJ did not identify the types of relief for which Ordonez would become ineligible if he failed to voluntarily depart. The BIA acknowledges this in its order: "We recognize that in giving his oral warnings the

---

**2.** Because Ordonez challenges the notice as inadequate, Respondent's reliance on *Shaar v. INS*, 141 F.3d 953 (9th Cir.1998), is misplaced. In that case, it was undisputed that the aliens received adequate notice. *Id.* at 956. Instead, they claimed that their failure to voluntarily depart was justified by exceptional circumstances or that their departure period was tolled. *Id.* at 956–58. Ordonez makes no such claim.

Immigration Judge did not specifically list the forms of relief for which the respondent would be ineligible if he failed to voluntarily depart as directed." The IJ told Ordonez only that "you must comply with either my order, or with any extension that you get by the Immigration and Naturalization Service, or this turns into an order of deportation and you will not legally be able to live in the United States for a period of five years." This was inadequate.

▮▮▮ The statute states that the alien must be provided "oral notice . . . of the consequences under subparagraph (A) of . . . remaining in the United States after the scheduled date of departure." INA § 242B(e)(2)(B). Subparagraph A references the list of relief for which eligibility can be lost in paragraph 5. INA § 242B(e)(2)(A). The government argues that all of the information Ordonez received cumulatively indicated the impact of failing to voluntarily depart. The statute, however, contains a specific requirement for oral notice, indicating that the types of

relief for which eligibility can be lost must be explained. The oral notice requirement makes sense given that an alien may have little education and even less experience dealing with the legal system. He or she may also incorrectly assume that while appeals are pending, the alien will not be required to depart. The IJ did not provide Ordonez with adequate oral notice of the impact of failing to voluntarily depart because the IJ did not indicate the forms of relief that would be lost. Because the oral notice was inadequate, the bar to suspension of deportation is inapplicable to Ordonez. *See* INA § 242B(e)(2)(B) (providing that the bar to eligibility "shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written . . . and oral notice . . . of the consequences . . . of the alien's remaining in the United States after the scheduled date of departure").[3]

**B. Additional Evidence**

▮▮▮ A motion to reopen is the proper way to introduce previously unavailable

---

**3.** Ordonez's other arguments are without merit. His claim that § 242B does not apply to grants of voluntary departure by the BIA, as opposed to the IJ, cannot succeed. When the BIA dismisses an appeal from a final order of deportation, the IJ's order becomes the final order of deportation on the date of the BIA's decision. *See In re Powell*, 21 I. & N. Dec. 81 (BIA 1995); *see also Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1173 (9th Cir.2003) (deferring to the BIA's interpretation that the voluntary departure periods begin on the date the BIA enters its order). Similarly, Ordonez's claim that the BIA's warning was inadequate also fails because, under *Powell*, the BIA need not separately provide notice according to § 242B, the requirements of which are fulfilled by the IJ's provision of notice. 21 I. & N. Dec. 81.

We also reject Ordonez's argument that the notice was inadequate because the record does not contain a Spanish version. The IJ certified that Ordonez received the warning in Spanish. Ordonez does not state that he did

not receive the Spanish warning and offers no evidence, such as a personal declaration, to challenge the IJ's certification.

Ordonez also complains that the advisory did not warn him that the ineligibility could extend beyond five years. Thus, he contends that he had no reason to understand that he would be ineligible for more than five years after December 15, 1995, when the IJ first offered him voluntary departure. However, the BIA denied his request for voluntary departure based on his failure to voluntarily depart within 30 days of the April 16, 1999, order granting voluntary departure. His argument therefore fails on the facts.

Finally, Ordonez contends that the BIA's approach runs afoul of *Contreras–Aragon v. INS*, 852 F.2d 1088 (9th Cir.1988) (en banc). In *Zazueta–Carrillo*, however, we recognized that amendments to the INA required the voluntary departure period to begin on the date the BIA enters its order and therefore found that *Contreras–Aragon* was no longer the law of the Circuit. 322 F.3d at 1174.

evidence. *See* 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. . . ."). The movant must support the motion with new evidence, but need only establish a prima facie case for relief, and need not conclusively establish that he warrants relief:

> A motion to reopen must state the new facts to be proved and must be supported by affidavits or other evidentiary material. In addition, a motion to reopen will not be granted unless the respondent establishes a prima facie case of eligibility for the underlying relief sought. We have found that a respondent demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied. We have *not required a conclusive* showing that eligibility for relief has been established. Rather, we have reopened proceedings "where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening."

*In re S–V,* 22 I. & N. Dec. 1306 (BIA 2000) (citations omitted).

Under the provisions in effect at the time Ordonez originally applied for suspension of deportation, he was required to show seven years of continuous physical presence, good moral character, and that deportation would cause him or his immediate relatives extreme hardship. 8 U.S.C. § 1254(a) (1995) (repealed); *INS v. Hector,* 479 U.S. 85, 86, 107 S.Ct. 379, 93 L.Ed.2d 326 (1986). Because it addressed the ground upon which the BIA denied his petition on remand—extreme hardship—Ordonez's additional evidence supported his claim for suspension of deportation.

Ordonez's additional evidence, regarding events in 1998 and 1999, raised in the motion to reopen and supported by his declaration and the death certificate was clearly unavailable during Ordonez's proceeding before the IJ in 1995,[4] although some of it may have been available when he filed his brief on remand. In ruling on the motion to reopen, the BIA dismissed the new evidence, stating that it would not alter its conclusion that Ordonez had not shown extreme hardship. The BIA, however, did not base this conclusion on an analysis of the evidence, but rather on the view that Ordonez's failure to mention the summer 1998 threat to his brother-in-law in his January 13, 1999, filing on remand "casts doubt on the veracity of the respondent's claim as set forth in his June 10, 1999, motion to reopen." Although the BIA acknowledged that, as of the date of the January 1999 filing, Ordonez may have been unaware of the December 1998 and January 1999 events, it found that "there is no reasonable explanation given for the respondent's failure to mention the July 1998 threats against his brother-in-law." The BIA therefore found that "respondent's evidence would not alter our conclusion on the issue of extreme hardship."

The BIA did not simply conclude that it was going to disregard evidence concerning the July 1998 threats because that

4. In fact, at the August 31, 1995, hearing the IJ suggested that if Ordonez had additional evidence the appropriate method for raising it would be through a motion to reopen: "I don't know what else to say to you except that if your—you or your lawyer can up (sic) with some other evidence that shows—that shows that there's a policy and how you fit into it and what happened against former police officers in Guatemala, you can file a motion to reopen your case."

evidence could have been submitted previously. The BIA, in effect, made an adverse finding regarding Ordonez's credibility. It relied on his failure to mention the July 1998 threats as the basis to discount and disregard the facts set forth in his declaration about the murder of Ordonez's brother-in-law in December 1998 and the threats to Ordonez's wife in January 1999.[5]

Because the movant must only make a prima facie showing, the BIA is required to accept the facts stated in the alien's affidavit unless they are inherently unbelievable. *Limsico v. U.S. INS*, 951 F.2d 210, 213 (9th Cir.1991). The BIA violates an alien's due process rights when it makes a sua sponte adverse credibility determination without giving the alien an opportunity to explain alleged inconsistencies. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 659–60 (9th Cir.2003); *Stoyanov v. INS*, 172 F.3d 731 (9th Cir.1999) (finding that the BIA abused its discretion by raising credibility sua sponte and giving the alien no chance to respond); *Campos–Sanchez v. INS*, 164 F.3d 448, 449–50 (9th Cir.1999) (holding that BIA violated alien's due process rights where it made an adverse credibility determination despite the fact that alien had not been advised below that his credibility was questionable and had been given no chance to rebut alleged inconsistencies).[6]

It is clear that the BIA's credibility determination was inadequate. In *Campos–Sanchez*, this court explained:

In this court's cases reviewing adverse credibility determinations made by the BIA, we have required that, in order to ensure a fair hearing, the BIA not only identify specific inconsistencies, but also "address in a reasoned manner the explanations that [petitioner] offers for these perceived inconsistencies." "[I]nconsistencies of less than substantial importance for which a plausible explanation is offered" cannot form the sole basis for an adverse credibility finding. The logical corollary to the requirement that the BIA must address the explanations offered by a petitioner is that the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum. *Id.* (citations omitted). Here, the BIA did not identify and respond to Ordonez's explanations. Either Ordonez was given no chance to contest the issue or the BIA did not address his arguments. Either way, Ordonez's rights were violated.

Ordonez persuasively contests the BIA's finding that his failure to submit the additional evidence on remand impugns his credibility. As a factual matter, the failure of Ordonez to discuss the July 1998 threat in his January 1999 submission to the BIA does not demonstrate a lack of credibility on his part. The threat to his brother-in-law in July was not so clearly tied to Ordonez or by itself so different from other incidents already included in the record. It became much more significant only after his brother-in-law was

---

5. We note that the BIA did not make an explicit credibility determination as required. *See Shoafera v. INS*, 228 F.3d 1070, 1075 n. 3 (9th Cir.2000) ("The law of this circuit does not permit implicit adverse credibility determinations."); *see also Aguilera–Cota v. INS*, 914 F.2d 1375, 1383 (9th Cir.1990) ("[IJ's] mere statement that a petitioner is 'not entirely credible' is not enough."). Because Ordo-

nez did not raise this issue, it is not the basis of our ruling.

6. Because the certified administrative record does not indicate whether the government filed an opposition to Ordonez's motion to reopen, it is not clear from the record whether the BIA raised the credibility issue sua sponte.

killed in December and another threat was directed to his wife in January 1999. But the BIA acknowledged that Ordonez might not have been aware of the later events at the time of his January 1999 submission. Thus, he would have been unlikely to report this information and the failure to add a description of the July 1998 threat by itself does not support a broader conclusion that Ordonez is not credible.

As a legal matter, Ordonez contends that he did not submit the new evidence with his briefing on remand because the BIA does not consider new evidence except in conjunction with a motion to reopen. He cites *Matter of Fedorenko*, 19 I. & N. Dec. 57 (BIA 1984), in which the BIA rejected the submission of a clearly relevant document because all evidence must be presented to the IJ. *Fedorenko* stated:

> We have no doubt that the letter is relevant to the "extreme hardship" requirement for suspension of deportation. Nevertheless, the Act provides that all evidence which is pertinent to determinations made during deportation proceedings, such as the determination of the respondent's eligibility for suspension of deportation, must be adduced in the hearing before the immigration judge. The Board is an appellate body whose function is to review, not to create, a record. See 8 C.F.R. 3.1(b) and 3.5. Thus, it would be inappropriate for us to accept the evidence proffered by the respondent.

*Id.* at 73–74; *cf. Socop–Gonzalez v. INS,* 272 F.3d 1176, 1180 (9th Cir.2001) (en banc) ("The purpose of a motion to reopen is to present new facts or evidence that may entitle the alien to relief from deportation.").

Recently, in *Ramirez–Alejandre v. Ashcroft,* 320 F.3d 858 (9th Cir.2003) (en banc), we reversed the BIA's determination that it could not consider new evidence of extreme hardship on appeal, noting that the BIA had taken a "schizophrenic" approach, sometimes considering new evidence, sometimes remanding to the IJ, and sometimes following *Fedorenko,* in concluding that it could not consider new evidence. *Id.* at 865–66. We also noted that, under applicable law at the time, a motion to reopen was the only formal mechanism for introducing new evidence after the BIA's decision. *Id.* at 867. Given this limitation and the inconsistent approach taken by the BIA, Ordonez's belief that BIA's legal rulings precluded him from submitting additional evidence provides a reasonable explanation for not submitting the evidence earlier.

Thus, the BIA's alternative ruling that Ordonez's evidence did not warrant consideration was an abuse of discretion violative of his due process rights.

## CONCLUSION

Based on the foregoing, we hold that the IJ's oral notice to Ordonez of the consequences of failing to voluntarily depart was insufficient as a matter of law and that the BIA erred in refusing to consider the additional evidence Ordonez offered to support his motion to reopen. The petition for review is **GRANTED,** the decision of the BIA is **REVERSED,** and the cause **REMANDED** for further proceedings consistent with this opinion.