Maria Isabel Gonzalez DE
MARTINEZ, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–73939.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed April 16, 2004.

Frank P. Sprouls, Ricci & Sprouls, San Francisco, CA, for the petitioner.

Thomas K. Ragland and Patricia A. Smith, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before: ALARCÓN, BEEZER, and W. FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge:

Maria Isabel Gonzalez De Martinez petitions for review of the Board of Immigration Appeals ("BIA")'s decision denying her motion to reopen immigration removal proceedings to apply for an adjustment of status on the basis of her marriage to a United States citizen and the pending visa application filed by her husband. Mrs. De Martinez argues that she was not provided adequate notice of the penalties for failure to depart voluntarily, that two immigration statutes impermissibly conflict, and that she was deprived of due process because aliens who are not eligible for voluntary departure irrationally receive more favorable treatment.

We deny Mrs. De Martinez's petition for review of the BIA's decision because we conclude that her contentions lack merit.

I

Mrs. De Martinez is a citizen of Mexico. She entered the United States without inspection in 1987, but was unable to prove her continuous presence prior to 1990. Mrs. De Martinez filed an asylum application on June 2, 1997. She was served with a notice to appear on July 21, 1997. She admitted that she entered illegally and she conceded removability. Mrs. De Martinez was granted time to file an application for cancellation of removal. The immigration judge ("IJ") denied her application for cancellation of removal because Mrs. De Martinez had not established ten years of physical presence in the United States.

She appealed the denial of her application to the BIA. The BIA affirmed the IJ's decision on June 6, 2002, and granted her voluntary departure within thirty days. The BIA's written order explained the penalties for failure to depart from the United States within thirty days. Mrs. De Martinez did not seek direct review of the BIA's decision upholding the IJ's removal order or the denial of her application for cancellation of removal. Nor did she seek a stay of the voluntary departure period granted by the BIA.

Mrs. De Martinez filed a motion to reopen for adjustment of status on August 5, 2002, based on a decision of the BIA in an unrelated case. *See In re Velarde–Pacheco*, 23 I. & N. Dec. 253, 256, 2002 WL 393173 (BIA 2002) (holding that a motion to reopen may be granted to provide an alien with the opportunity to pursue an application for an adjustment of status when a five-part test is satisfied). Mrs. De Martinez alleged in her motion to re-

open that she is married to a United States citizen. Her husband filed an application on December 11, 1997, requesting immigrant status on her behalf pursuant to 8 U.S.C. § 1154(a) and 8 U.S.C. § 1151(b)(2)(A)(i).

In her motion to reopen, Mrs. De Martinez argued that *In re Velarde–Pacheco* held that such an unapproved visa application provides sufficient grounds to reopen removal proceedings. The BIA denied the motion to reopen because she failed to leave the United States within thirty days of the effective date of its order granting voluntary departure. Mrs. De Martinez filed a timely petition for review.

## II

■ We have subject matter jurisdiction to hear a petition for review of a decision of the BIA denying a motion to reopen. *See Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1169–70 (9th Cir.2003) (holding that the court's jurisdiction to review denials of motions to reopen was not eliminated by statutory restrictions pertaining to voluntary departure and other discretionary relief); *cf. Sarmadi v. INS*, 121 F.3d 1319, 1321 (9th Cir.1997) (holding that the court does not have jurisdiction to review an order denying a motion to reopen where an alien has been convicted of certain crimes).

■ We review the denial of a motion to reopen for abuse of discretion. *Shaar v. INS*, 141 F.3d 953, 955 (9th Cir.1998). Pure questions of law raised in a petition to review a decision of the BIA are reviewed de novo. *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir.1999).

Mrs. De Martinez contends that the BIA abused its discretion in denying her motion to reopen because she did not receive actual notice of the penalties for failing to depart. She concedes that the BIA's order was mailed to her attorney.

The immigration laws applicable in this matter were revised and reorganized in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Prior to the enactment of IIRIRA, the penalties for failure to depart did not apply to an alien absent written notice in English and Spanish, and oral notice to the alien in a language he or she understood. *See* 8 U.S.C. § 1252b(e)(2)(B) (repealed 1996).[1] At oral argument, Mrs. De Martinez improperly relied upon our decision in *Ordonez v. INS*, 345 F.3d 777 (9th Cir. 2003), in contending that she did not receive adequate notice of the penalties for failing to depart voluntarily. We held in that matter that the transitional rules of IIRIRA applied to Mr. Ordonez "[b]ecause deportation proceedings were commenced ... prior to April 1, 1997, and the final order of deportation was entered after October 30, 1996." *Id.* at 779 n. 1. The transitional rules of IIRIRA "provid[e] that, for the most part, the new provisions of IIRIRA do not apply to aliens against whom deportation proceedings were commenced prior to its effective date." *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 597 (9th Cir.2002). In *Ordonez*, we held that adequate oral notice was required pursuant to the pre-IIRIRA version of 8 U.S.C. § 1252b. 345 F.3d at 783–84. Our holding in *Ordonez* does not apply in this mat-

---

**1.** Section 1252b(e)(2)(B) (repealed 1996) provided as follows:

Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure, other than because of exceptional circumstances.

ter because removal proceedings against Mrs. De Martinez commenced on July 21, 1997, after the effective date of IIRIRA.

■ In IIRIRA, Congress provided that "[t]he order permitting the alien to depart voluntarily shall inform the alien of the penalties" for failure to depart. 8 U.S.C. § 1229c(d).[2] There is no longer an explicit statutory remedy if the order fails to "inform the alien of the penalties." *Compare* 8 U.S.C. § 1229c(d) (2003) (requiring notice by order without conditioning penalties on notice) *with* 8 U.S.C. § 1252b(e)(2)(B) (repealed 1996) (applying penalties only if statutory oral and written notice is provided). We need not address whether such an alleged defect in the order would permit relief after a failure to depart, as did pre-IIRIRA law, because in this case the order clearly states:

> NOTICE: If the respondent fails to depart the United States within the time period specified, or any extensions granted by the district director, the respondent shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Immigration and Nationality Act. *See* section 240B(d) of the Act.

The plain language of 8 U.S.C. § 1229c(d) requires only that the order inform the alien of the penalties for failure to depart voluntarily. Service of an order to the alien's attorney of record constitutes notice to the alien. *See Arreaza–Cruz v. INS*, 39 F.3d 909, 911 (9th Cir.1994) (holding that service of a final deportation order to the alien's attorney was sufficient notice to the alien pursuant to 8 C.F.R. § 292.5). Mrs. De Martinez received adequate notice pursuant to 8 U.S.C. § 1229c(d).

### III

Mrs. De Martinez further argues that the statutory penalty for failure to depart prohibiting certain relief conflicts with the statutory requirement to file a motion to reopen within ninety days of a final order of removal. She proposes that "non-frivolous" motions to reopen filed within ninety days, "presenting exceptional circumstances," should operate to "forgive the failure to depart." Opening Brief on Petition for Review at 12.

At the conclusion of removal proceedings, an alien may be granted permission to leave the United States within a specified time period. Congress has mandated that "[p]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days." 8 U.S.C. § 1229c(b)(2). An alien who fails to depart voluntarily within the specified time period is subject to a civil penalty of $1,000 to $5,000, and is ineligible for a period of ten years for relief under §§ 1229c, 1229b, 1255, 1258, and 1259. 8 U.S.C. § 1229c(d). The Department of Homeland Security ("DHS") has implemented voluntary departures in 8 C.F.R. § 1240.26,[3] allowing

---

2. Section 1229c(d) provides as follows:

 If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000 and be ineligible for a period of 10 years for any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title. The order permitting the alien to depart volun-

 tarily shall inform the alien of the penalties under this subsection.

3. Section 1240.26 provides in pertinent part:
 (e).... If voluntary departure is granted at the conclusion of proceedings, the immigration judge may grant a period not to exceed 60 days.
 (f).... Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district

an initial grant of up to sixty days, followed by extensions by certain DHS officials for a total of not more than sixty days, as permitted by statute.

Congress has also established that"[a]n alien may file one motion to reopen proceedings" that "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(6)(A), (B). "[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(6)(C)(i).

We applied analogous pre-IIRIRA immigration law in *Shaar* to decide that a motion to reopen that is acted upon by the BIA after an alien has failed to depart within the specified time period must be denied if the relief requested is unavailable as a result of the failure to depart. 141 F.3d at 959. The Shaars were found deportable because they failed to leave the United States when they were supposed to, after entering as nonimmigrant visitors. *Id.* at 955. The Shaars were permitted more than a year to depart voluntarily, but waited until two days before their departure date to file a motion to reopen. *Id.* After filing the motion, they then failed to depart. *Id.* We held that the plain language of 8 U.S.C. § 1252b(e)(2)(A) (re-

pealed 1996)[4] precluded relief after the voluntary departure date because the Shaars had not timely departed. *Id.* at 956–57, 959. In *Zazueta–Carrillo*, we also upheld the BIA's interpretation that post-IIRIRA law precludes relief when an alien fails to depart in the specified time period. 322 F.3d at 1169, 1174.

■ Under DHS regulations, any departure from the United States precludes an alien from filing a motion to reopen and constitutes a withdrawal of any pending motion to reopen. 8 C.F.R. § 1003.2(d).[5] Departing also may defeat substantive claims that depend upon continuous physical presence, which otherwise could be raised in a motion to reopen. *See, e.g.,* *Vasquez–Lopez v. Ashcroft,* 343 F.3d 961, 974 (9th Cir.2003) (holding that Mr. Vasquez–Lopez was not eligible for cancellation of removal because voluntary departure created a break in his continuous physical presence). Therefore, absent an extension or other relief, aliens who have been granted permission to depart voluntarily have at most sixty days to file a motion to reopen.

In *Shaar*, we applied earlier versions of the statutes at issue, but the principles have not changed. The goal of defeating delaying tactics has been reinforced by IIRIRA: Congress has limited the maximum time period for voluntary departure

---

director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. . . . In no event can the total period of time, including any extension, exceed . . . 60 days as set forth in section 240B of the Act.

**4.** Section 1252b(e)(2)(A) (repealed 1996) provided as follows:

Subject to subparagraph (B), any alien allowed to depart voluntarily under section 1254(e)(1) of this title or who has agreed to depart voluntarily at his own expense under section 1252(b)(1) of this title who remains in the United States after the scheduled

date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

**5.** Section 1003.2(d) provides in pertinent part: "Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion."

to sixty days. 8 U.S.C. § 1229c(b)(2).[6] Congress has limited the maximum time period for filing a motion to reopen to ninety days. 8 U.S.C. § 1229a(c)(6)(C)(i).[7] Congress has also increased the penalties for failure to depart voluntarily and has eliminated the "exceptional circumstances" justification. *Compare* 8 U.S.C. § 1229c(d) (2003) *with* 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996).

The language at issue in the two statutes does not conflict. Aliens found to be removable may be permitted to depart voluntarily no more than sixty days after a final order. 8 U.S.C. § 1229c(b)(2). Aliens may file a motion to reopen within ninety days of a final order. 8 U.S.C. § 1229a(c)(6)(C)(i). An alien granted voluntary departure may depart voluntarily at any time "within the time period specified." *See* 8 U.S.C. § 1229c(d) (stating penalty for failure to depart). "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(1)(A). Aliens granted voluntary departure or forcibly removed may file a motion to reopen within ninety days, before departing or being removed. 8 U.S.C. § 1229a(c)(6)(C)(i) (providing for a maximum of ninety days in which to file a motion to reopen); 8 C.F.R. § 1003.2(d) (prohibiting motions to reopen *after* departure or removal from the United States). To mandate that aliens be permitted to remain in this country in hopes of filing a motion to reopen, notwithstanding an order of voluntary departure to be effected within sixty days, would impose a ninety-day automatic stay of all voluntary departures. We have previously held, however,

that a motion to reopen does not create an automatic stay of a voluntary departure deadline. *Zazueta–Carrillo*, 322 F.3d at 1172–74.

▮ Mrs. De Martinez was granted permission to depart voluntarily within thirty days pursuant to 8 U.S.C. § 1229c(b)(2). She did not request an extension from DHS officials. A motion to reopen must be acted upon prior to the expiration of the voluntary departure time period in order for relief to be granted. *Shaar*, 141 F.3d at 956–57. The filing of a motion to reopen prior to the voluntary departure date does not automatically stay the voluntary departure time period. *Zazueta–Carrillo*, 322 F.3d at 1172–74.

*In re Velarde–Pacheco*, the case that prompted Mrs. De Martinez's motion, was decided on March 6, 2002. On August 5, 2002, five months after *In re Velarde–Pacheco* was decided, sixty days after the BIA's final order, and thirty days after she was required to depart voluntarily, Mrs. De Martinez filed the motion to reopen the proceedings to apply for an adjustment of status. The BIA denied the motion on October 25, 2002. In its decision, it assumed that the facts alleged would support an adjustment of status. It determined correctly that Mrs. De Martinez was ineligible for relief due to her failure to depart the United States within the allotted time period. Under *Shaar* and *Zazueta–Carrillo*, and considering Congressional action in IIRIRA to limit the availability of collateral review, the BIA did not err in denying the motion to reopen.

### IV

Mrs. De Martinez also maintains that aliens permitted to depart voluntarily are

---

6. Section 1229c(b)(2) provides: "Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days."

7. Section 1229a(c)(6)(C)(i) provides: "Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal."

treated less favorably than aliens who are not eligible for voluntary departure, and that the classification and treatment are irrational. She asserts that "[t]hose aliens [not eligible for voluntary departure] can file a[m]otion to [r]eopen up to day 90 following a final order by the BIA. On the contrary, a party who meets all of the criteria for [v]oluntary [d]eparture is treated worse than [t]he above alien." Opening Brief on Petition for Review at 14.

 A legislative classification must be " 'wholly irrational' " to violate equal protection. *Hernandez–Mezquita v. Ashcroft*, 293 F.3d 1161, 1163–64 (9th Cir.2002) (quoting *Sudomir v. McMahon*, 767 F.2d 1456, 1464 (9th Cir.1985)). The challenged law will be upheld if it is rationally related to a legitimate government purpose. *Id.* at 1164. "Challengers have the burden to negate 'every conceivable basis which might support [a legislative classification] ... whether or not the basis has a foundation in the record.' " *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320–21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)) (alteration in original).

 Aliens have "no fundamental right to be in the United States" and Congress has "exceedingly broad power over the admission and expulsion of aliens." *Shaar*, 141 F.3d at 958. It is not irrational that aliens "found to be here improperly and ... given the privilege of departing within a particular period, rather than being seized and deported forthwith," are not eligible for benefits that "some people under somewhat similar circumstances might manage to remain long enough to accrue." *Id.* The fact that others "might manage to remain long enough to accrue some benefit or other" does not amount to a violation of constitutional rights. *Id.*

Mrs. De Martinez has not demonstrated that aliens forcibly removed are better situated than aliens permitted to depart voluntarily. There is no indication in the record that aliens subject to a final order of removal typically remain in the United States for at least ninety days. Assuming that such aliens remain in the United States for at least ninety days, Mrs. De Martinez has not shown such treatment to be irrational. One notable legitimate purpose that Mrs. De Martinez has failed to negate is that it is less costly and more humane to allow responsible aliens to depart voluntarily without the stigma of being forcibly removed from the United States. It is rational to conclude that the benefit to Mrs. De Martinez and other aliens similarly situated far outweighs any possible detriment from departing more quickly than aliens forcibly removed from the United States.

The petition for review is **DENIED.**