**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAVINDER KAUR,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent.*

No. 18-72786

Agency No.
A079-606-563

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 16, 2020
San Francisco, California

Filed June 21, 2021

Before: Mary M. Schroeder and Marsha S. Berzon, Circuit
Judges, and Salvador Mendoza, Jr.,* District Judge.

Opinion by Judge Mendoza

---

*The Honorable Salvador Mendoza, Jr., United States District Judge for the Eastern District of Washington, sitting by designation.

# SUMMARY**

## Immigration

Granting Ravinder Kaur's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that the Board erred in concluding that Kaur failed to establish material changed circumstances to warrant an exception to the time limitation on her motion to reopen, and in concluding that she failed to establish prima facie eligibility for asylum, withholding of removal, or protection under the Convention Against Torture.

Kaur sought to reopen her removal proceedings based on a combination of changed personal circumstances – the death of her abusive husband and his family's threats that they would kill her if she returned to India because she was responsible for his death, and changed country conditions – including worsening conditions in India for women and widows.

The panel held that the Board mischaracterized the record and erred in concluding that Kaur presented evidence of only changed personal circumstances in support of reopening. The panel explained that while a self-induced change in personal circumstances does not qualify for the changed circumstances exception, that principle cannot apply rigidly when changed circumstances in the country of origin, while personal to the petitioner, are entirely outside her control, as was the case here. The panel further

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

explained that even where any change in personal circumstances is voluntary and did not originate in the country of nationality, the changed circumstances exception applies where changes in personal circumstances are made relevant due to changes in country conditions. The panel wrote that Kaur's husband's death, and his family's death threats, were made relevant by increased violence in India against women, and in particular against widows. The panel further wrote that, contrary to the Board's determination that Kaur provided evidence of only generalized conditions, Kaur presented evidence demonstrating that the prevalence and severity of human rights violations against women and widows had materially worsened in many respects.

The panel held that the Board also erred in concluding that Kaur failed to establish prima facie eligibility for asylum and withholding of removal relief. First, the panel concluded that the Board erred in determining that Kaur failed to establish that a protected ground, including her membership in a family social group, would be one central reason, or a reason, for the harm she fears. The panel wrote that a person may share an identity with a persecutor, and if a member of a particular social group is persecuted by other members of that same group because those members perceive the applicant as being "insufficiently loyal or authentic" to that group, she has been persecuted on account of a protected ground. Second, the panel concluded that the Board erred by requiring Kaur to show that her similarly situated family members had been mistreated. The panel explained that the safety of similarly situated members of the family who remained in the country of origin may be pertinent to a claim of future persecution, but does not itself disprove it, and in this case, the Board relied on the safety of Kaur's daughter, who was not similarly situated. Third, the

panel concluded that the cultural context and Kaur's evidence established more than a mere personal vendetta.

The panel held that the Board erred in concluding that Kaur failed to establish prima facie eligibility for CAT protection.  First, the panel held that the Board erred in applying a "more likely than not" standard, rather than requiring Kaur to show a "reasonable likelihood" of meeting the statutory requirements for CAT protection.  Moreover, the panel concluded that the Board abused its discretion in determining that Kaur did not meet the government consent or acquiescence requirement.  The panel pointed out that Kaur presented evidence that her husband's family is wealthy and has the means of carrying out their threats, that India suffers from widespread corruption, and that officials respond ineffectively to crimes, especially those against women.  Based on that evidence, the panel concluded that the Board did not have substantial evidence to dismiss Kaur's fears as speculation.

**COUNSEL**

Robert B. Jobe (argued) and Morgan Russell, Law Office of Robert B. Jobe, San Francisco, California, for Petitioner.

Brooke M. Maurer (argued), Trial Attorney; Carl McIntyre, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

MENDOZA, District Judge:

This asylum case is about changed country circumstances, including changes in personal circumstances, which are entirely outside the applicant's control. Ravinder Kaur, an Indian national, appeals the BIA's decision denying her motion to reopen removal proceedings. Kaur argues that the BIA erred in concluding that she has failed to show materially changed conditions in India, her country of origin. She also argues that the BIA erred in concluding she failed to establish a prima facie case of asylum and withholding of removal or protection under the Convention Against Torture.

We agree with Kaur on several critical points. The BIA erred in determining that she failed to show material changed conditions in India. Kaur's personal circumstances in India changed in a way entirely outside her control and, relatedly, violence against women has materially increased in India. These situations together constitute changed country circumstances. The BIA also erred in its analysis of whether Kaur established a prima facie case for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We thus remand the case to the BIA for further proceedings on Kaur's motion to reopen.

**BACKGROUND**

Kaur's parents arranged her marriage to Balwinder Singh in 1993. Singh turned out to be an alcoholic and abusive. After the birth of their first child, Kaur moved to the Philippines with Singh, his father, and his stepmother. There, Singh's abuse worsened. He regularly raped Kaur, often overpowering her when he drank. Their first three children

were girls, which angered Singh, who wanted a boy. The abuse increased still further. Singh hit Kaur and tried to force her to abort her third pregnancy.

In May 2001, Kaur and one of her daughters entered the United States on visitor visas. Later that summer, Kaur gave birth to her fourth child, a son. Singh and another of their daughters arrived in the United States later in 2001.

In the United States, Singh continued to physically and verbally abuse Kaur and the children. His drinking worsened. Neighbors called the police several times, but Singh forced Kaur to lie and say that everything was fine. In 2004, Kaur finally called the police herself, and the police arrested Singh. His parents admonished her that "all Indian men do that," and "it didn't matter." AR 85. They said, "Indian people don't disclose private matters to other people." *Id.* At their insistence, Kaur eventually went to the police and asked that they drop the charges.

The United States deported Singh in 2007, after an arrest for a DUI. Singh told Kaur that if she returned to India, "he would take revenge" and "make [her] pay." *Id.* Singh's mother told Kaur that if she returned, she "would not live in peace." AR 86.

Singh died in 2013 from alcohol-related illnesses. When Kaur contacted her in-laws, they became very angry. They told her she "was to blame for their son's death" and that if she "ever came back to India, they would get [her] killed." *Id*.

## PROCEDURAL HISTORY

In fall 2001, Kaur and Singh applied for asylum. Kaur's asylum application falsely stated that militants in the

Philippines had raped her.[1] They testified before an immigration judge on July 2, 2002, and the IJ denied their application on July 11, 2002. The IJ found Kaur and Singh not credible, and alternatively held that Kaur failed to meet her burden of proof to show eligibility for relief from removal.

Between 2003 and 2009, Kaur filed four motions to reopen. The IJ denied the first, and the BIA denied the next three in turn.

Finally, on January 17, 2018, Kaur filed the motion to reopen at issue. The motion asserts material changed circumstances arising in Kaur's country of nationality under 8 C.F.R. § 1003.2(c)(3)(ii) due to worsened conditions since 2002 for women in India generally, combined with the more specific changed circumstances of Singh's death and his family's explicit threats. The motion also argues that Kaur presents a prima facie case for asylum and withholding of removal because of (1) her past abuse in India due to her membership in the particular social group of Mr. Singh's family, (2) her fear of future persecution by her in-laws because of that family membership, and (3) her fear of persecution because of her membership in the particular social group of Indian widows. Kaur also argues that she has established prima facie eligibility for CAT protection because of the past violence and rape she suffered in India, her in-laws' threats, and widespread corruption, impunity for familial violence, and murder of women by their in-laws in India.

---

[1] Kaur states that Singh was responsible for the fabrication, and that he threatened and physically attacked her when she objected to filing the false application.

On September 25, 2018, the BIA denied Kaur's 2018 motion to reopen, concluding that Kaur had shown no material changed circumstances in India since her hearing in 2002. They also reasoned that she did not establish prima facie eligibility for asylum, withholding removal, or protection under CAT. On October 15, 2018, Kaur petitioned for review with this Court.

## STANDARD OF REVIEW

We review the denial of a motion to reopen for abuse of discretion. *Martinez v. Barr*, 941 F.3d 907, 921 (9th Cir. 2019). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law." *Id.* We review legal questions de novo and factual findings for substantial evidence. *Barrios v. Holder*, 581 F.3d 849, 854 (9th Cir. 2009), *as amended*, *abrogated in part on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013).

## DISCUSSION

To prevail on her motion to reopen, Kaur

> needed to clear four hurdles: (1) [s]he had to produce evidence that conditions had changed in [India]; (2) the evidence had to be material; (3) the evidence must not have been available and would not have been discovered or presented at the previous proceeding; and (4) [s]he had to demonstrate that the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought.

*Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008), *as amended* (citations and internal quotation marks omitted); *see also* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c).

## A. The BIA erred in determining that Kaur did not establish material changed country conditions.

An alien may generally file one motion to reopen within ninety days of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). Courts disfavor motions to reopen, especially when they work "to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Still, "[t]he motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)).

There is no time limit for reopening when the motion "is based on changed country conditions *arising in the country of nationality* or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added); *see also* 8 C.F.R. § 1003.2(c)(3)(ii) (also describing the changed country conditions exception).

Kaur filed the instant motion to reopen years after the ninety-day deadline. Kaur must therefore show changed country circumstances for the BIA to consider her claims. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii).

### 1. Singh's death and the threats from Kaur's in-laws constituted more than a personal change in circumstances

Citing *Najmabadi v. Holder*, 597 F.3d 983, 991 (9th Cir. 2010) and *He v. Gonzales*, 501 F.3d 1128, 1132 (9th Cir. 2007), the BIA concluded that Singh's death and his parents' death threats did not constitute a material change in *country* circumstances, only a change in *personal circumstances*. But this conclusion mischaracterizes the holding in *Najmabadi* and *He*. In those cases, the Court held that "a self-induced change in personal circumstance" such as a child's birth in the United States does not suffice for changed country circumstances purposes. *He*, 501 F.3d at 1132 (internal quotation marks and alterations omitted); *see also Najmabadi*, 597 F.3d at 991 (petitioner's wish to engage in political activism in her home country did not constitute changed country circumstances). The rule established in *He* and *Najmabadi* makes sense because "otherwise, applicants could move to reopen by changing circumstances within their control." *Larngar v. Holder*, 562 F.3d 71, 77 (1st Cir. 2009).

But the utility of the rule in *He* and *Najmabadi* does not hold water when the changed circumstances occur in the country of nationality or the country to which removal is ordered, and are entirely outside the petitioner's control, even if they are personal, painful, or life-altering.[2] The *He*

---

[2] Two unpublished memorandum dispositions illustrate this point. In *Lopez v. Sessions*, 688 Fed App'x 497, 499 (9th Cir. 2017), we held that when petitioner's abusive ex-husband had returned to her country of origin in the period between the removal proceedings and the motion to reopen, a change in country circumstances had occurred. In *Bains v. Holder*, 584 Fed. App'x 574, 576 (9th Cir. 2014), we held that when threats against a Sikh activist in India had increased since the removal

and *Najmabadi* principle cannot apply rigidly when changed circumstances in the country of origin, while personal to the petitioner, are entirely outside her control.

Kaur's changed circumstances are, in part, deeply personal. But her husband's death in India and the ensuing threats from her in-laws were new circumstances in India, entirely outside her control; she herself did not volitionally change or affect them.

## 2. Kaur's change in circumstances makes all the more relevant the worsening conditions for women, especially widows, in India

On top of Kaur's new and uncontrollable external family turmoil in India, the material increase in violence against women in India since 2002 contributed to the changed country conditions affecting Kaur. As *Chandra v. Holder*, 751 F.3d 1034 (9th Cir. 2014), held, even where any change in personal circumstances is voluntary and did not originate in the country of nationality, the changed circumstances exception applies "if the changed country conditions are made relevant by a change in the petitioner's personal circumstances." *Id.* at 1038 (footnote omitted).[3]

---

proceedings, he had shown more than a change in personal circumstances. A friend who had visited petitioner in the United States was tortured when he returned to India, which constituted new "qualitatively different" evidence that established a change in country conditions. *Id.*

[3] A recent case, *Rodriguez v. Garland*, 990 F.3d 1205 (9th Cir. 2021), applied *Chandra*, stating that "while changes in personal circumstances may be relevant to a motion to reopen based on changed country conditions, a petitioner cannot succeed on such a motion that 'relies *solely* on a change in personal circumstances,'" *id.* at 1210

We review the BIA's findings of fact for substantial evidence. *Barrios*, 581 F.3d at 854. The BIA did not provide substantial evidence for its conclusion here. While it found that the documents submitted "reflect generalized evidence of violence against, and mistreatment of, women in India (including widows), and impunity among public officials," it determined that Kaur had "not submitted any evidence showing that treatment of widows in India has worsened since the time of her 2002 hearing." AR 4–5.

Singh's death and the threats made by Kaur's in-laws make relevant any increased violence against women, especially widows, in India. *See, e.g.*, *Salim v. Lynch*, 831 F.3d 1133, 1137–38 (9th Cir. 2016) (holding that, under *Chandra*, petitioner's conversion from Buddhism to Christianity made material the increased violation against Christians).[4] Kaur is now a widow, and widows in India face increasing dangers.

---

(quoting Chandra, 751 F.3d at 1037). Interpreting the rule established in *Chandra*, *Rodriguez* emphasized the regulatory language "requir[ing] that a motion to reopen be based on 'changed circumstances arising *in the country* of nationality." *Id.* (quoting *Chandra*, 751 F.3d at 1036). In *Rodriguez*, the only change in personal circumstances the petitioner could point to was his decision to become a government informant within the United States. *See id.* at 1207, 1209–10. *Rodriguez*, like *Chandra*, thus did not address a situation in which the circumstances that changed, although personal, did occur "in the country of nationality" *and* were beyond the control of the petitioner.

[4] *See also Gui Xiang Zheng v. Sessions*, 720 Fed. App'x 394, 395–96 (9th Cir. 2018) (holding that where petitioner "submitted evidence that enforcement of China's 'one-child' policy ha[d] become more coercive and more strict since her original application," the birth of a child may make material those changed country circumstances); *Farrales v. Lynch*, 673 Fed. App'x. 746, 748–49 (9th Cir. 2016) (holding

And contrary to the BIA's conclusion, Kaur did submit evidence concerning these increasing dangers. The number and percentage of widows in India have increased since 2001. The new, previously unavailable evidence establishes that the "growing number of widows in India are more at risk of discrimination, exploitation, and abandonment and more likely to be forced into abject poverty which threatens their safety and their lives." AR 69. The U.S. State Department's 2016 report on human rights in India noted that "widows were [viewed as] inauspicious and sometimes cast out by their own families." AR 181. In contrast, the most recent State Department report on India at the time of Kaur's July 2002 hearing (released in March 2002) did not discuss at all the prevalence of mistreatment of India widows.[5]

Kaur also presented evidence that so-called "dowry deaths"—murders of women by their in-laws—have increased since 2002. There were 6,917 reported dowry deaths in India in 1998, and 8,455 reported dowry deaths in 2014. Instances of cruelty by husbands or their relatives more than doubled from 49,170 in 2001 to 122,877 in 2014. Widows are often ostracized and abused as well as blamed for their husbands' deaths.

More generally, Kaur presented evidence that violence against women in India has materially increased since 2002. For example, the Indian National Crime Records Bureau recorded 13,754 incidents of rape in 1995, 24,923 in 2012,

---

that petitioner's anti-corruption publications, together with the increased political violence against critics of the government, constituted changed country conditions).

[5] It does mention Sati, the Hindu practice of burning widows on their husbands' funeral pyres, stating that the practice rarely—but occasionally—occurs.

and 33,707 in 2013. It also found that between 2001 and 2014, incidents of crime against women more than doubled, jumping from 1.5 million cases to about 3.5 million.

Even given the corresponding increase in India's population, the increased violence is material. Assuming a female population of 463,091,989 in 1995, there were about 2.97 rapes for every 100,000 women.[6] *See* Population, Female – India, *World Bank*, https://data.worldbank.org/ind icator/SP.POP.TOTL.FE.IN?locations=IN ("*World Bank Data*"). By 2013, assuming a female population of 614,678,382, there were about 5.48 rapes for every 100,000 women. *See World Bank Data.* Assuming a female population of 489,529,545 in 1998, there were about 1.41 dowry deaths per 100,000 women, which fell slightly to about 1.36 dowry deaths per 100,000 women in 2014, assuming a female population of 621,854,638. *See World Bank Data.* But violence against women increased from 290.72 of every 100,000 women in 2001, given a female population of 515,957,245, to 562.83 out of every 100,000 women in 2014. And cruelty by husbands or relatives increased from affecting 9.53 out of every 100,000 women in 2001 to 19.76 out of every 100,000 women in 2014. In nearly every category, the danger to widows like Kaur in India has spiked.

True, violence against women was a problem in India in 2002. But according to Kaur's evidence, the prevalence and severity of human rights violations continue to materially

---

[6] The Court provides these calculations for demonstrative purposes only. Because they assume that all the recorded rapes were against women and no woman experienced more than one rape, they are imprecise. Despite the imprecision, the figures show that even with the corresponding increase in India's population, the prevalence of violence against women has materially worsened over time.

worsen in many respects. *See Salim*, 831 F.3d at 1138 (finding material changed circumstances where there was "an upsurge of religious radicalism" and "cases of intolerance [were] on the rise"); *Malty v. Ashcroft*, 381 F.3d 942, 946 (9th Cir. 2004) (finding material changed circumstances where petitioner submitted a report describing increased violence against Coptic Christians and a declaration describing incidents of violence against petitioner's family).

On questions of fact, we largely defer to the findings of the BIA. But, as we have illustrated, the BIA's determinations that Kaur did not present "any" evidence of material changes in India is simply incorrect. Given the error, and the related error regarding the pertinence of the change in Kaur's personal circumstances, the BIA's conclusion that Kaur did not show a change in country conditions is not supported by substantial evidence. In combination, Kaur's husband's death in India, her resulting new status as a widow, her in-laws' threats, and the increased violence in India against women generally and widows in particular present material changed country circumstances. The BIA thus erred.

## B. Prima Facie Case of Eligibility

Having concluded that Kaur's motion to reopen meets the changed country conditions exception, we turn to whether Kaur has established a prima facie case for relief. Kaur "need not *conclusively* establish that [she] warrants relief." *See Salim*, 831 F.3d at 1139 (emphasis added) (quoting *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003)). "A party demonstrates prima facie eligibility for relief 'where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Id.* (quoting *Ordonez*, 345 F.3d at 785).

"To determine whether [Kaur] has established a prima facie case, the [BIA] must look at the evidence in its entirety." *See Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991). "It must accept as true the facts stated in . . . affidavits [and declarations] unless they are inherently unbelievable." *Id.*

### 1. The BIA erred in determining that Kaur did not establish a prima facie case of entitlement to asylum or withholding of removal

To qualify for asylum, Kaur must show that she is a refugee within the meaning of 8 U.S.C. § 1101(a)(42). 8 U.S.C. § 1158(b)(1). The BIA concluded that Kaur had not shown prima facie eligibility for asylum or withholding of removal for two reasons. First, it determined that she did not show "that membership in a particular social group, or any other protected ground, would be a reason, or at least one central reason, for the harm she fears." AR 4.[7] Second, it determined that she did not show that she could not reasonably relocate within India to an area away from her in-laws.

We conclude that the BIA's first determination was incorrect and remand for proceedings consistent with this conclusion, including proceedings reconsidering the

---

[7] To establish eligibility for withholding, Kaur need not show that membership in a particular social group is "one central reason" for the harm she fears. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017). Rather, Kaur may establish a case for withholding if the evidence establishes that membership in such a group is "'a' reason" for that harm. *Id.* Because we hold that the BIA erred in determining that Kaur had not met the "central reason" standard required for asylum, it necessarily follows that the BIA erred in determining she had not met the standard for withholding.

relocation issue once the BIA ascertains the appropriate burden of proof.

### i. The BIA erred in its determination that Kaur's membership in a particular social group is not a central reason for the harm she fears

To qualify for asylum, Kaur must show "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for [her] persecut[ion]." 8 U.S.C. § 1158(b)(1)(B)(i). Relevant here, a "particular social group" means a

> collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some common characteristic that is fundamental to their identity as a member of that discrete social group.

*De Valle v. INS*, 901 F.2d 787, 793 (9th Cir. 1990) (quoting *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986)). A particular social group may also consist of people "who share a common, immutable characteristic, including innate qualities such as sex, color, or kinship ties." *Rios v. Lynch*, 807 F.3d 1123, 1126–27 (9th Cir. 2015) (internal quotations omitted).

The BIA reasoned that Kaur's membership in a particular social group or other protected characteristic would not "be a reason, or at least one central reason, for the harm she fears." AR 4. While the BIA acknowledged that

"family ties may meet the requirements of a particular social group depending on the facts and circumstances in the case," it found that Kaur had not introduced sufficient evidence for such a finding. AR 5; *see Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018) (quoting *Rios*, 807 F.3d at 1128) ("the family remains the quintessential particular social group.").[8] It stated that Kaur had introduced no evidence that others in the particular social group, that is, her husband's family, had been similarly mistreated, noting that Kaur's daughter, who had lived with her paternal grandparents, did not report experiencing physical abuse. Instead, the BIA found that Kaur's allegations "establish only that she fears being harmed as a result of a personal vendetta," which, without more, does not provide a sufficient basis for relief. AR 5.

We disagree. First, we acknowledge that Kaur's asserted fear of persecution based on her membership in Singh's family, *by other members of that same family*, is an atypical basis for an asylum claim. But a person may share an identity with a persecutor and nonetheless claim persecution on account of that same protected ground. *Maini v. I.N.S.*, 212 F.3d 1167, 1175 (9th Cir. 2000). It is a "persecuting group's motive, rather than its demographics, [that] is crucial to a determination of whether a petitioner is entitled to asylum." *Id.* at 1174. If a member of a particular social group is persecuted by other members of that same group because those members perceive the applicant as being "insufficiently loyal or authentic" to that group, she has been persecuted on account of a protected ground. *Id.* at 1175.

---

[8] Although the BIA may also have erred by failing to consider Kaur's status as an Indian widow as a particular social group, *see, e.g.*, *Ngengwe v. Mukasey*, 543 F.3d 1029, 1034 (8th Cir. 2008); *Sibanda v. Holder*, 778 F.3d 676, 681 (7th Cir. 2015), because the parties did not fully brief the issue before this Court, we do not consider it here.

That Kaur claims persecution by members of the same particular social group—Singh's family, of which she herself is a member—therefore does not foreclose her claims for asylum and withholding.

Here, Kaur asserts that her late husband routinely abused and sexually assaulted her, that he tried to force her to terminate a pregnancy, and that his parents blame her for her husband's death and have threatened to kill her. According to Kaur, both Singh and his parents accused Kaur of being a bad wife and threatened to take revenge should she return to India. Kaur states that Singh's parents specifically blame Kaur for Singh's arrest in the United States, his subsequent deportation, and his ultimate death. Kaur also presented evidence that her in-laws have escalated the danger to her by threatening her own parents and have invoked the family relationship in their threats against Kaur. All of the threats against Kaur, direct and indirect, have turned on her relationship with Singh's family, including Singh's parents' perception of Kaur as being "insufficiently loyal" to Singh and his family. *See Maini*, 212 F.3d at 1175.

Second, the prima facie burden does not require her to show that other members of her family have been similarly mistreated. If Kaur was in fact "singled out for avengement on account of" her familial status, "[t]he fact that [her] relatives who remained behind have not been set upon is manifestly irrelevant." *See Jahed v. INS*, 356 F.3d 991, 1001 (9th Cir. 2004). The safety of similarly situated members of the family who remained in the country of origin may be pertinent to a claim of future persecution but does not itself disprove it. *Santos-Lemus v. Mukasey*, 542 F.3d 738, 743–44 (9th Cir. 2008), *overruled in part on other grounds by Henriquez-Rivas*, 707 F.3d at 1093. Further, it is the safety of *similarly situated* family members only that is pertinent to

a claim of persecution. *See id.* at 744. Kaur's daughter, although related to Singh, was raised by her grandparents for thirteen years, so her role in the family group was not similar to Kaur's.

Third, the BIA erred in determining Kaur's claims merely establish a personal vendetta. "There is no exception to the asylum statute for violence from family members; if the government is unable or unwilling to control persecution, it matters not who inflicts it." *Faruk v. Ashcroft*, 378 F.3d 940, 943 (9th Cir. 2004). And a "retributory motive" can "exist[] alongside a protected motive." *Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013). To establish a claim for asylum, Kaur need only show that the protected ground is "one central reason" for the persecution. *See id.* A central reason must be primary, essential, or principal. *Parussimova v. Mukasey*, 555 F.3d 734, 740 (9th Cir. 2009). The "protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id*. at 741 (internal citation omitted).

While a personal vendetta *without more* does not provide a sufficient basis for relief, the cultural context and Kaur's evidence establishes more than a mere personal vendetta. Kaur's status as a member of her husband's family is not simply an "incidental" reason for her persecution. *See id.* If the familial relationship did not exist by virtue of the arranged marriage, Kaur's husband and in-laws would not have threatened her or planned to harm her. *See id.*

### ii. Because the BIA erred in its particular social group analysis, it must reconsider its relocation analysis on remand

After determining that Kaur had not established membership in a cognizable particular social group, the BIA concluded that Kaur had not met her burden of showing that she could not relocate. A petitioner bears the burden of showing she could not reasonably relocate only if she has not established past persecution; if she has, the burden falls to the government to demonstrate that the petitioner could avoid future persecution by "reasonably relocat[ing] internally to an area of safety." *Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019); 8 C.F.R. § 1208.13(b).

The BIA's conclusion on the relocation question therefore depended on its particular social group analysis. Because the BIA erred in finding that Kaur did not demonstrate that membership in a particular social group was a reason for her persecution, we remand to the BIA for further proceedings consistent with this holding, including a determination whether Kaur has established a prima facie case on past persecution for asylum and withholding purposes based on her membership in Singh's family and is therefore entitled to a presumption of a well-founded fear of future persecution. *See Dai v. Sessions*, 884 F.3d 858, 874 (9th Cir. 2018), *vacated on other grounds by Garland v. Dai*, No. 19-1155, 593 U.S. __ (June 1, 2021). If so, the burden would fall on the government, and the BIA's current holding on the issue—reached by placing the burden on Kaur—could not stand.

**2. The BIA erred in determining that Kaur did not establish a prima facie case of entitlement to protection under CAT**

"CAT prohibits removal of a noncitizen to a country where the noncitizen likely would be tortured." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020). For the purposes of CAT protections,

> [t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1).

The BIA concluded that Kaur had not met her burden for establishing a prima facie case for protection under the CAT because she "has not established that it is more likely than not that she, in particular, will be tortured by or at the instigation of, or with the consent or acquiescence of . . . a public official or other person acting in an official capacity in India." AR 4. It found that Kaur based her claim that the Indian police would acquiesce in her torture or murder on speculation. The BIA made several errors.

### i. The BIA incorrectly applied the "more likely than not standard"

First, the BIA applied the wrong standard to Kaur's motion to reopen. The proper standard for deciding whether she had established a prima facie case for protection under CAT requires only that Kaur show a "reasonable likelihood that the statutory requirements for relief have been satisfied." *Ordonez*, 345 F.3d at 785 (internal quotation omitted). Respondent cites *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005), for the proposition that a "reasonable likelihood" standard and a "more likely than not" standard are equivalent. Not so. The "reasonable likelihood" standard applies at the motion to reopen stage, while the "more likely than not standard" applies to CAT protection claims themselves. *Compare Ordonez*, 345 F.3d at 785 *with Nuru*, 404 F.3d at 1216.

To prevail on her motion to reopen, Kaur need not prove her CAT claim. She must merely show that there is a reasonable likelihood that she will be able to show that it is more likely than not she will be tortured if returned to India. The BIA thus erred by requiring Kaur's prima facie case to *establish* that torture was more likely than not.

### ii. The BIA abused its discretion in finding that Kaur did not meet the "consent or acquiescence" requirement

The "consent or acquiescence" requirement of CAT requires that the government of the country of deportation be aware of the alleged torture but either "willfully blind to it . . . or unwilling[] to oppose it." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011); *see* 8 C.F.R. § 1208.18(a)(1). Evidence of police corruption supports a finding of state involvement. *Barajas-Romero v. Lynch*, 846 F.3d 351, 363

(9th Cir. 2017). The BIA must consider past torture as well as evidence of "'gross, flagrant, or mass violations of human rights' in the home country and other country conditions." *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1080 (9th Cir. 2015) (quoting *Nuru*, 404 F.3d at 1218–19).

Kaur presented evidence that Singh's parents are wealthy and have the means to carry out their threats upon her return. The U.S. State Department has stated that India suffers widespread corruption and that officials respond ineffectively to crimes, especially crimes against women. In fact, according to the U.S. State Department, violence by Indian police, including extrajudicial killings, torture, and rape, remains one of India's "most significant human rights problems." AR 142. Based on that evidence, the BIA did not have substantial evidence to dismiss Kaur's fears as speculation. The BIA thus abused its discretion when ruling on Kaur's establishment of a prima facie case under CAT.[9]

## CONCLUSION

We **REMAND** this case to the BIA for further proceedings consistent with this opinion.

---

[9] In assessing Kaur's CAT claim on remand, the BIA should consider "all evidence relevant to the possibility of future torture," including evidence that Kaur could relocate. 8 C.F.R. § 1208.16(c)(3). As the CAT regulation "does not bar relief if an applicant could relocate," *Akosung v. Barr*, 970 F.3d 1095, 1101 (9th Cir. 2020), she need not establish that she cannot reasonably relocate as part of her prima facie case. *Compare* 8 C.F.R. § 1208.13(b)(3) *with* §§ 1208.16(c)(3), 1208.18.