NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 7 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RAMZAN ALI CHAUDHRY,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 20-70482

Agency No. A072-175-541

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 12, 2021**
San Francisco, California

Before:  NGUYEN and COLLINS, Circuit Judges, and RAKOFF,*** District Judge.
Dissent by Judge COLLINS.

Ramzan Ali Chaudhry, a citizen of Pakistan, petitions for review of an order

of the Board of Immigration Appeals ("BIA") denying his motion to reopen his

removal proceedings.  We have jurisdiction under § 242 of the Immigration and

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without
oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

*** The Honorable Jed S. Rakoff, United States District Judge for the Southern
District of New York, sitting by designation.

Nationality Act ("INA"), 8 U.S.C. § 1252. In light of intervening decisions by this court and the Attorney General, we grant the petition and remand for further proceedings.

The BIA relied on *He v. Gonzales*, 501 F.3d 1128 (9th Cir. 2007), to conclude that Chaudhry failed to show changed circumstances in Pakistan, his country of origin, that would allow the BIA to consider his otherwise untimely motion to reopen. *He* held that a self-induced change in the petitioner's personal circumstances—there the birth of two of the petitioners' children in the United States, which caused the petitioners to be in violation of longstanding population control policies in place in China, their country of origin—cannot satisfy the changed country circumstances exception. *Id.* at 1132. The BIA determined that Chaudhry's circumstances are indistinguishable from *He* because Chaudhry alleges only a change in his personal circumstances, namely that his wife's former in-laws in Pakistan became aware of her marriage to him and threatened to kill him if he returns.

After the BIA's decision, however, we clarified in *Kaur v. Garland*, 2 F.4th 823 (9th Cir. 2021), that *He* is inapplicable when the changed circumstances, even if personal to the petitioner, occur in the country of origin and are beyond the petitioner's control. *Id.* at 830-31. We thus held that the death of the petitioner's husband in India and her in-laws' ensuing threats to kill her if she returned were

2

changed circumstances in India that she did not "volitionally change or affect." *Id.* at 831.

Similar to the petitioner in *Kaur*, and unlike the petitioners in *He*, Chaudhry faces changed circumstances in his country of origin—the death threat from his wife's former in-laws in Pakistan—and those circumstances appear beyond Chaudhry's control, thus alleviating any concern of gamesmanship. *See He*, 501 F.3d at 1131-32 (noting policy concern that a petitioner will "gam[e] the system" by altering circumstances within his control (quoting *Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006))). Chaudhry's marriage to his wife, while volitional, is an act seemingly removed from the independent decision of a third party to threaten him with death. We therefore remand to the BIA to reconsider, in light of *Kaur*, whether Chaudhry satisfies the changed country circumstances exception. *See, e.g.*, *Naranjo-Barrajas v. Holder*, 356 F. App'x 923, 923-24 (9th Cir. 2009) (remanding to the BIA for reconsideration of a denial of a motion to reopen in light of an intervening decision by this court).[1]

---

[1] The dissent would deny the petition on a ground that the BIA did not consider—Chaudhry's self-inducement of his changed circumstances. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency."). It concludes that by marrying his wife, Chaudhry "expose[d] [himself] to a pre-existing risk" of harm but provides no record support for reaching that conclusion in the present case. Our remand instead allows the agency to consider self-inducement in the first instance with the guidance of both *He* and *Kaur*.

The BIA also denied the motion to reopen on the alternative ground that Chaudhry failed to show prima facie eligibility for relief because he claimed fear of persecution based on membership in an inadequate particular social group. In concluding that Chaudhry failed to present a cognizable group, the BIA relied on *Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019). The Attorney General has since vacated that decision, reasoning that its analysis was "inconsistent with the decisions of several courts of appeals that have recognized families as particular social groups," including *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015). *Matter of L-E-A-*, 28 I. & N. Dec. 304, 305–06 (A.G. 2021). We therefore remand to the BIA so that it may reconsider Chaudhry's prima facie eligibility for relief.

**PETITION GRANTED AND REMANDED.**

*Chaudhry v. Garland*, 20-70482

COLLINS, Circuit Judge, dissenting:

In my view, the BIA did not abuse its discretion in concluding that, under

*He v. Gonzales*, 501 F.3d 1128 (9th Cir. 2007), Chaudhry had failed to establish

changed country conditions that would allow a reopening of his removal

proceedings. *See Chandra v. Holder*, 751 F.3d 1034, 1036 (9th Cir. 2014) (stating

that denial of a motion to reopen is reviewed for abuse of discretion). Because the

majority instead remands the case for reconsideration, I respectfully dissent.

**I**

Section 240 of the INA specifies that a motion to reopen must "be filed

within 90 days of the date of entry of [the alien's] final administrative order of

removal," but it provides an exception for aliens who seek reopening in order to

apply for asylum or withholding of removal "based on changed country conditions

arising in the country of nationality or the country to which removal has been

ordered." *See* 8 U.S.C. § 1229a(c)(7)(C)(i)–(ii). Because Chaudhry's motion to

reopen was filed almost five years after his final administrative order of removal,

his motion could not be considered unless, *inter alia*, he established such changed

country circumstances.

In seeking reopening, Chaudhry relied on the threat of an "honor killing" by

his wife's ex-husband's family in Pakistan. Chaudhry met his wife in the U.S. and

in 2004 they were "religiously married at a local mosque."  His wife had been granted asylum in the U.S. in 2003 based on her "fear of being subjected to honor killing in Pakistan" by her ex-husband's family, who opposed her having fled her in-laws' home after her husband disappeared in 2002.  Years later, in 2013, Chaudhry's wife served divorce papers on her ex-husband in Pakistan, and at that point the ex-husband's family learned that she had religiously married another man in the U.S.  After the Pakistani divorce was finalized, Chaudhry and his wife were civilly married in the U.S. in 2014.  His wife's brother told her in the summer of 2018 that the ex-husband's brother has threatened to kill Chaudhry if he returns to Pakistan.  Chaudhry contended that "murdering someone in the name of family honor is extremely prevalent" in Pakistan and that, because his marriage "violated deeply held customs and belie[f]s held by [his wife's] former husband's family," he was at risk of an honor killing if he is removed to Pakistan.

The BIA concluded that Chaudhry's showing failed to demonstrate the requisite changed circumstances, and it alternatively concluded that he also failed to establish a prima facie case for asylum or withholding of removal.[1]  *See Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008) (in addition to changed

---

[1] The BIA also concluded that Chaudhry failed to establish prima facie eligibility for protection under the Convention Against Torture, but Chaudhry has not challenged that determination in his opening brief in this court.  He therefore forfeited any such claim.  *See Hui Ran Mu v. Barr*, 936 F.3d 929, 936 (9th Cir. 2019).

country circumstances, alien seeking reopening must make a prima facie showing of eligibility for relief).

## II

I would hold that the BIA did not abuse its discretion in concluding that Chaudhry's case is not meaningfully distinguishable from *He* and that, as a result, Chaudhry was not eligible for reopening. I therefore do not address whether Chaudhry also failed to establish a prima facie case for relief.

## A

In *He*, we held that a "self-induced change" in the alien's circumstances in the U.S. (there, the births of a second child and a third child in the U.S.) did not qualify as "changed circumstances arising . . . in the country to which deportation has been ordered" within the meaning of 8 C.F.R. § 1003.2(c)(3)(ii), which is the regulation that restates and implements the similarly worded "changed country conditions" requirement set forth in INA § 240(c)(7)(B)(ii). *See He*, 501 F.3d at 1132; *cf. Kaur v. Garland*, 2 F.4th 823, 830–31 (9th Cir. 2021) (holding that "the rule in *He*" does not apply when the relevant changed circumstances occur in "the country to which removal is ordered[] and are entirely outside the petitioner's control"). That remained true, *He* held, even though that self-induced change of circumstances in the U.S. now brought the alien within a pre-existing category of persons that would be subject to potential persecution in the country in question.

Thus, although the birth of a second child in the U.S. now meant that the Hes were, for the first time, "subject to forced sterilization pursuant to the [Chinese Government's] population control policy if they are returned to China," we held that the changed-country-circumstances factor required a showing of "changed conditions in China for reasons *other* than the change in their personal circumstances following the births of their children in the United States." *Id*. at 1131–32 (emphasis added). So too here, it is not sufficient that the self-induced change in Chaudhry's circumstances in the U.S. (his marriage to his wife) placed him at risk of being subjected to what Chaudhry himself concedes is the longstanding and "extremely prevalent" practice of honor killings in Pakistan.

The majority nonetheless remands the case on the ground that *He* might be considered to be distinguishable here. I think it is already clear that *He* is controlling and that a remand is therefore unnecessary. The majority notes that, "unlike the petitioners in *He*, Chaudhry faces changed circumstances in his country of origin—the death threat from his wife's former in-laws in Pakistan." *See* Mem. Dispo. at 3. But, as I see it, an analogous change in circumstances was present in *He*. After the births of their second and third children in the U.S., the Hes faced changed circumstances in their country of origin inasmuch as Chinese officials in that country now wanted to harm them because those additional births in the U.S. "render[ed] them subject to forced sterilization pursuant to the [Chinese

4

Government's] population control policy if they are returned to China." 501 F.3d at 1131. Even though there was, in that sense, literally a change in circumstances in China, we held that it did not satisfy the statutory requirement because the Hes had not shown "changed conditions in China for reasons *other* than the change in their personal circumstances following the births of their children in the United States." *Id*. at 1131–32 (emphasis added). Under *He*, the statutory standard is not met if the alien takes actions within the U.S. that *bring* him or her within a pre-existing category of threatened harm in the country of origin. That is exactly the case here.

For similar reasons, I do not think that *He* may be distinguished on the asserted ground that, because the "death threat" from Chaudhry's wife's ex-in-laws appears to be "beyond Chaudhry's control," there is no concern about "gamesmanship" of the immigration system. *See* Mem. Dispo. at 3. Under *He* and *Kaur*, the focus must be on whether the alien had control over the circumstances that *triggered* the new threat, and not merely over whether the alien could control the threat itself. In *He*, the threat of forced sterilization by Chinese officials was triggered by the births of the Hes' additional children in the U.S., which we described as "'circumstances entirely of [the Hes'] own making.'" 501 F.3d at 1131 (citation omitted). Even though, once that threat was triggered in *He*, the Hes had no control over it, we held that these changes did not satisfy the applicable

5

changed-country-conditions standard. By contrast, in *Kaur*, the new threats arose from the *death* of Kaur's husband in India, and we distinguished *He* on the grounds Kaur's "*husband's death in India* and the *ensuing* threats from her in-laws were new circumstances in India, *entirely outside her control*; she herself did not volitionally change or affect them." 2 F.4th at 831 (emphasis added). Here, the triggering event—Chaudhry's marriage to his wife—was not "entirely outside [Chaudhry's] control." *Id*. The majority suggests that, although "Chaudhry's marriage to his wife" was concededly "volitional," it is "seemingly removed from the independent decision of a third party to threaten him with death." *See* Mem. Dispo. at 3. But this contention is hard to square with *He*. Under *He*, voluntary actions in the U.S. that expose oneself to a pre-existing risk do not satisfy the changed-country-conditions standard.

Because *He* seems to me to be controlling, I would not remand the case for reconsideration in light of *Kaur*.

**B**

*He* recognized an exception to its general rule, but the BIA did not abuse its discretion in finding that exception inapplicable here.

In cases where an alien's changed circumstances in the U.S. place him or her for the first time into a "category of individuals" at risk of mistreatment in the country of deportation, the alien can still satisfy the requirement to show changed

6

country conditions by establishing that *the treatment of that category of persons has changed in that country.* *He*, 501 F.3d at 1132; *see also Chandra*, 751 F.3d at 1038 (holding that "a petitioner's untimely motion to reopen may qualify under the changed conditions exception in 8 C.F.R. § 1003.2(c)(3)(ii), even if the changed country conditions are made relevant by a change in the petitioner's personal circumstances"); *accord Kaur*, 2 F.4th at 831–32. The BIA properly concluded that Chaudhry had not shown that "country conditions" had materially changed "with respect to honor killings in Pakistan" since the hearing on his applications for relief in immigration court.

The BIA noted that Chaudhry's motion had not presented any evidence of an increase in such killings in Pakistan and that, in fact, the evidence showed that Pakistan had "taken steps to prevent honor killings, including [by] passing an anti-honor[-]killing law in 2016 which closes the loophole that allowed perpetrators of honor killings to go free if the victim's family pardoned the perpetrator." Although Chaudhry presented some evidence that this new law had not been as effective as had been hoped, I cannot say that, in reviewing this record, the BIA abused its discretion in ultimately determining that there had not been a material change in country conditions concerning honor killings in Pakistan. In my view, therefore, the motion to reopen was properly denied.

I respectfully dissent.

7