NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

OCT 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OSCAR AGUILAR-PEREZ, | No. 22-1071 |
| Petitioner, | Agency No.<br>A213-082-611 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 6, 2023[**]
San Francisco, California

Before: FLETCHER, TALLMAN, and LEE, Circuit Judges.

Oscar Raul Aguilar-Perez, a native and citizen of Mexico, seeks review of the Board of Immigration Appeals' (BIA) decision denying his applications for withholding of removal and protection under the Convention Against Torture

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

(CAT).  He also challenges a decision by the Immigration Judge (IJ) declining to terminate removal proceedings.  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1.  <u>Termination of removal proceedings.</u>  We decline to consider Aguilar-Perez's argument pertaining to his defective Notice to Appear (NTA) because he failed to raise it before the BIA as required by 8 U.S.C. § 1252(d)(1).  *See Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020) ("Exhaustion requires a non-constitutional legal claim to the court on appeal to have first been raised in the administrative proceedings below, and to have been sufficient to put the BIA on notice of what was being challenged.") (citation omitted).  The Supreme Court recently held that § 1252(d)(1)'s exhaustion requirement is a claim-processing rule.  *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023).  Given that the government properly raised Aguilar-Perez's failure to exhaust his defective NTA argument, we must enforce the rule.  *Fort Bend v. Davis*, 139 S. Ct. 1843, 1849; *see Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).

2.  <u>Withholding of removal.</u>  Substantial evidence supports the BIA's determination that Aguilar-Perez is not eligible for withholding of removal.  To satisfy his burden of proof, Aguilar-Perez must show a "clear probability"—*i.e.*, that it is more likely than not—that he would be subject to persecution upon deportation

because of a protected characteristic. *Garcia v. Wilkinson*, 988 F.3d 1136, 1146 (9th Cir. 2021).

Aguilar-Perez claims that he will be harmed on account of his membership in three particular social groups (PSGs): (1) "People testifying against or otherwise opposing gang members;" (2) "Those perceived as wealthy landowners;" and (3) "Mexicans who resist gang recruitment." But the record does not compel the conclusion that Aguilar-Perez belongs to any of these groups.

Aguilar-Perez asserts that he heard a gunshot on the night that one of his neighbors was murdered and that, on another occasion, he either witnessed or was told about a murder near his home. However, Aguilar-Perez has not provided any evidence that he testified against any gang members for these murders or that he took any other action to oppose gang members. *Cf. Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc) ("Henriquez-Rivas testified in open court against the gang members who killed her father."). The record thus does not compel the conclusion that Aguilar-Perez belongs to the "people testifying against or otherwise opposing gang members" PSG.

Even assuming that "those perceived as wealthy landowners" is a cognizable PSG,[1] Aguilar-Perez has never owned any land in Mexico, and he provided no

---

[1] The BIA suggested that this group is not cognizable, citing *Cordoba v. Barr*, 962 F.3d 479, 483 (9th Cir. 2020), but it did not explicitly hold as much. Aguilar-Perez's brief does not argue whether this group is cognizable.

evidence compelling a reasonable adjudicator to find that others perceived him or his family to be wealthy. Aguilar-Perez argues that his family was forced to pay the cartel a fee to operate its business and that he was "kidnapped [after] his father stopped paying." These arguments do not compel a finding that Aguilar-Perez will be persecuted because of a protected characteristic. First, the record supports the BIA's finding that the motivation behind the extortion was financial gain—not because of a protected characteristic. *See Macedo Templos v. Wilkinson*, 987 F.3d 877, 883 (9th Cir. 2021) ("The evidence proves that criminals in Mexico will target anyone they believe can pay, regardless of their victim's background or reason for their wealth."); *see also In re M-E-V-G-*, 26 I. & N. Dec. 227, 250–51 (BIA 2014). Second, Aguilar-Perez admits that he does not know why he was kidnapped, and he testified that no harm befell his father when he stopped paying the cartel. And third, even if Aguilar-Perez were kidnapped because his father stopped paying the cartel, that would not compel the conclusion that he was or would be harmed in Mexico because he owns land or is perceived to be wealthy; if anything, it suggests that the kidnapping was motivated by "personal retribution." *Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013).

Substantial evidence supports the BIA's finding that Aguilar-Perez is not a member of "Mexicans who resist gang recruitment," as there is no evidence that Aguilar-Perez was targeted for gang recruitment. Additionally, the BIA correctly

determined that "Mexicans who resist gang recruitment" is not a cognizable PSG. *See Barrios v. Holder*, 581 F.3d 849, 854–55 (9th Cir. 2009) (citing *Ramos-Lopez v. Holder*, 563 F.3d 855, 857–62 (9th Cir. 2009)) ("[R]esistance to gang membership is not a protected ground."), *abrogated in part by Henriquez-Rivas*, 707 F.3d at 1093.

3. <u>CAT.</u>  Substantial evidence supports the BIA's determination that Aguilar-Perez failed to establish eligibility for protection under the Convention Against Torture.  To be eligible for CAT protection, Aguilar-Perez "bears the burden of establishing that [he] will more likely than not be tortured with the consent or acquiescence of a public official if removed to [his] native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020); 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

Aguilar-Perez has not demonstrated that he faces a particularized risk of future torture.  He emphasizes that he has a general fear of the Mexican government's inability or unwillingness to prevent the "pervasive, widespread, and common" human rights violations that occur in the state.  But as the BIA correctly held, generalized evidence of crime—even police corruption—does not show that Aguilar-Perez "faces a particularized, ongoing risk of future torture." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706–07 (9th Cir. 2022).

Furthermore, substantial evidence supports the BIA's determination that Aguilar-Perez failed to establish that the Mexican government would acquiesce in

his torture. "The 'consent or acquiescence' requirement of CAT requires that the government of the country of deportation be aware of the alleged torture but either 'willfully blind to it . . . or unwilling[] to oppose it.'" *Kaur v. Garland*, 2 F.4th 823, 837 (9th Cir. 2021) (alterations in original) (quoting *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011)). Aguilar-Perez argues that the police in Mexico are unresponsive to cartel violence and intimidation. In support of that argument, Aguilar-Perez states (1) that the police "did not arrive for over an hour" after his neighbor was murdered; (2) that, after his kidnapping, his "parents attempted to file a police report, but were unable to do so"; and (3) that he was able to file a police report after his motorcycle was stolen, but the police never inquired into the matter. But these assertions do not provide evidence of the Mexican government's consent or acquiescence to Aguilar-Perez's alleged torture.

**PETITION DENIED.**